# Humes *v.* O'Bryan & Washington.

## *Action on Account for Goods Sold and Delivered.*

1. *Deposition of witness present in court.*—When a witness, whose deposition has been taken, is personally present in court at the trial, and is competent to testify, his deposition should be suppressed, and he should be examined orally.

2. *Continuance on terms as to taking depositions.*—In the exercise of its discretionary power to grant continuances "upon such terms as to the court shall seem proper" (Rule No. 16, Code, p. 160), the court may, in granting a continuance to the defendant, order that the plaintiff, "in consideration of said continuance," be allowed to take the depositions of certain named witnesses, "on filing interrogatories and giving notice as in such cases required by law," dispensing with a preliminary affidavit.

3. *Same; exception to such order.*—Although the minute-entry granting such continuance further recites that the defendant *excepted* to the order, the exception avails nothing, when the record shows that the defendant had the full benefit of the continuance: he must accept or reject the continuance, with the terms annexed, as an entirety.

4. *Declarations against interest, by deceased person.*—As a general rule, the declarations of a third person are regarded as mere hearsay, and are not competent evidence; yet, they become competent, as the best evidence of which the nature of the case will admit, when it is shown that they were against the interest of the declarant when made, that he had competent knowledge of the facts stated, and that he is since deceased.

5. *Same.*—This principle applies, where the defendant is sued as a partner with a person since deceased, on an account contracted with plaintiffs, and renders admissible, as evidence for the defendant, the declaration of the deceased that they were not partners at the time the account was contracted, on proof of the insolvency of the alleged partnership as such when the declaration was made.

6. *Declarations explanatory of possession.*—The declarations of a per-

[Humes v. O'Bryan & Washington.]

son who is in possession of property, made in good faith, explanatory of his possession, and showing the character or extent of his claim to the property—whether in his own exclusive right, or as tenant of another; or the capacity in which he holds, as partner, trustee, or agent of another—are competent evidence as a part of the *res gestæ*, whenever the fact of possession itself is pertinent to the issue, no matter who may be the parties to the litigation.

7.   *Same; proof of partnership.*—On this principle, the defendant in this case being sued as partner in a mercantile business with a person since deceased, by whom the business was conducted; *held*, that the acts and declarations of the deceased, while in possession of the goods, and carrying on the business, so far as they were explanatory·of his possession, as indicating whether the goods were his own, or were claimed by him as joint partner with another person, were competent and admissible as evidence, as part of the *res gestæ*; but were not admissible evidence, as against the defendant, of the existence of the alleged partnership, unless some notice or knowledge of them was brought home to him; though they were relevant to corroborate or rebut, as the case may be, other evidence offered to prove the existence or non-existence of such partnership.

8.   *General reputation; what may be proved by.*—The existence or non-existence of a partnership can not be proved by general reputation; nor can the character of a person's possession of a stock of goods be proved by any general understanding in the neighborhood in which he carries on his business.

9.   *Same.*—The existence of a partnership having been once shown by independent testimony, proof of a general reputation, or common report of its existence, in the neighborhood in which the business is carried on, is competent to show a probable knowledge of the fact by the plaintiff, on the principle that a person would be likely to know any fact generally known in his neighborhood; and for the like reason, the notoriety of a dissolution, or, perhaps, of the non-existence of a partnership, may be shown, to charge a party with implied notice of the fact; but this principle can not be so extended, as to charge a party residing in a distant city with implied knowledge or notice of a fact, because it is generally known in a remote local neighborhood, without proof of other facts tending to show that he had opportunities of hearing the common report.

10.   *Declarations of partner; admissibility as against another.*—The declarations of one person, as to the existence of a partnership between himself and another person, are not admissible evidence against the latter, to prove the fact of partnership, unless they were made in his presence, or fall within some recognized exception to the general rule excluding hearsay evidence.

11.·   *Same.*—The declarations of one partner, while in possession and carrying on the business, strictly explanatory of his possession, whether against interest or not, are admissible as evidence against the person sought to be charged as his co-partner, in corroboration of other and independent evidence of the alleged partnership; but his declarations as to where he had bought the goods, or a portion of them, or on whose account, being merely narrative of a past transaction, do not come within this principle; and his declaration of his inability to induce the defendant to become his surety for a sum of money, which he wished to borrow, is not admissible.

12.   *Authority of partner.*—A mercantile business not being necessarily or usually incident to the business of farming, the partner who conducts the business of a partnership in farming has no implied or incidental authority to carry on a mercantile business on joint account in connection with it.

13.   *Liability as partner to third persons.*—Although there may be no partnership in fact, a person who suffers himself to be held out as a

[Humes v. O'Bryan & Washington.]

partner with another, may be charged as a partner for debts contracted with third persons, who dealt with the supposed partnership in ignorance of the true relations existing between the parties.

14. *Admission implied from silence.*—Plaintiffs having written to defendant in reference to their account, on which the action is founded, · addressing him as a partner with the person, since deceased, by whom the business was carried on; his failure to answer the letter would, if unexplained, operate as an implied admission on his part of the fact of partnership.

15. *Telegrams; construction of, and relevancy as evidence.*—When the contract sued on was negotiated and consummated between the parties by telegraph, the several dispatches, as written instruments, must be construed by the court; but, when they passed between other persons, and are not the foundation of the action, they may be relevant evidence of a collateral fact, and may be submitted to the jury for that purpose; as to establish the fact of partnership, where they related to the existence and solvency of the alleged partnership, and the answer to inquiries was sent with the consent of the defendant sought to be charged.

16. *Same.*—A telegram sent to a merchant, in reply to an inquiry as to the solvency of a commercial partnership, saying "*Sell small bill, and on short time,*" may authorize another person to act on the information, and to sell goods on the faith of the partnership, if it was sent with the knowledge of the defendant sought to be charged as a partner.

17. *Charge invading province of jury.*—The court can not assume an admission as proved, although there was evidence tending to establish it, when it was in fact controverted.

18. *Limitation of partner's authority; burden of proof.*—Any private agreement between partners, or limitation placed on the authority of the partner by whom the business is conducted, is of no avail against a creditor who has contracted in ignorance of it; and the *onus* of showing notice or knowledge of such agreement or limitation is on the partner who disputes his liability on an account contracted within the scope of the partnership.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

This action was brought by O'Bryan & Washington, partners doing business in the city of Nashville, Tennessee, against L. R. Glover and Milton Humes, as partners doing business under the firm name of Glover & Humes; and Glover having died, the suit was prosecuted to judgment against Humes alone, as surviving partner. The action was commenced on the 22d September, 1873, and was founded on an account for goods sold and delivered by plaintiffs, during the year 1872, to said Glover & Humes, amounting to about $750. The complaint contained the common counts only. The defendant Humes pleaded the general issue, "in short by consent," and two special pleas, denying his liability as a partner in the alleged firm of Glover & Humes, and denying that the account was contracted by him, or by any one authorized to bind him; and the cause was tried on issue joined on these several pleas. The evidence adduced on the trial was taken down by a stenographer, and is set out at length in the bill of exceptions, which covers 357 pages of the transcript. Numerous exceptions were re-

[Humes v. O'Bryan & Washington.]

served by the defendant to the rulings of the court during the trial, principally on objections· to evidence; and on these exceptions 97 assignments of error are here made. It is only possible, within the limits of a report, to give such a statement of the, facts as will render intelligible the several points decided by this court.

Before entering on the trial, the defendant moved the court to suppress the depositions of E. M. Carney, J. W. Carter, A. Glover, and George W. Glover, "because the affidavits for the taking of said depositions were not made by plaintiffs, as required by law, which would authorize the taking of said depositions; and because, as to the depositions of said A. Glover and G. W. Glover, said witnesses were present, and could be examined orally. Thereupon, the plaintiffs read to the court an order made in this cause, at the last term of the. court," in these words: "Came the parties, by their attorneys, and it is ordered by the court that this cause be continued on account of the sickness of L. P. Walker, one of the counsel for the defendant, on motion of the defendant; and in consideration of said continuance, it is ordered by the court that the plaintiffs be allowed to take the depositions of W. Richardson, J. W. Carter, A. N. Glover, G. W. Glover, and E. M. Carney, on filing interrogatories and giving notice as in such cases required by law; to which order defendant excepts." The court thereupon overruled "defendant's motion to suppress said depositions, or either of them, and defendant excepts." The motion to suppress the depositions of the Glovers, on the ground that they were personally present in court, was renewed when each of the depositions was offered in evidence, and was again overruled.

Carney and Carter were clerks and agents of the plaintiffs, and each of them testified to the presentation of the account, on which the suit was founded, to the defendant in Huntsville, and to his repeated promises to pay it, and requests for indulgence, though he refused to give his note for the debt; and each of them testified that, in these several interviews, the defendant did not deny the existence of the partnership of Glover & Humes, nor dispute his liability as a partner for the debt. A. Glover and G. W. Glover were sons of said L. R. Glover, and had acted as a clerk and salesman in the store of their father; and each testified to various facts and circumstances tending to show that a partnership in the store existed between their father and said Humes,—as, that the books were kept in the name of Glover & Humes, the boxes marked in their name, and accounts made out in their name; that a revenue license was taken out in their name, and posted in a conspicuous place in the store; that Humes frequently came to the store, went

behind the counter, examined the goods, and sometimes slept in the back room connected with the store. Several exceptions were reserved to portions of this testimony, and other testimony of a similar character, which it is unnecessary to state at length.

The account sued on was contracted by Glover himself, while in Nashville, on the 12th April, 1872, and amounted to $587.82. He had previously bought a small bill of goods, amounting to about $60, in the name of Glover & Humes, for which cash was paid ; and a larger bill, amounting to several hundred dollars, which was paid, on the order of Humes, out of the proceeds of certain bales of cotton shipped to Nashville. On the 12th April, when he desired to buy the goods on credit, the plaintiffs consulted, as one of them testified, with Wright, Hooper & Co., another mercantile firm in Nashville, of whom Glover also desired to purchase a bill of goods, and agreed that a telegraphic dispatch should be sent by the latter firm to W. Richardson, their attorney in Huntsville, inquiring as to his solvency, or the solvency and standing of Glover & Humes ; and a dispatch was accordingly sent by them, on that day, which, as delivered to Richardson, was in these words : "*How do you regard Glover & Hemm, Leeman's Ferry, Alabama ?*" Richardson at once answered, "*Sell only for cash; no such firm as I know of ;*" but, meeting Humes on the street, as he came from the telegraph office, and informing him of the dispatch and his answer, Humes expressed regret, as Richardson testified, lest his answer might injure Glover, and prevent him from getting the goods which he wished ; and after some conversation between them, as to the terms of which the testimony was conflicting, he sent another dispatch, in these words : "*Sell small bill, and on short time.*" This last dispatch was delivered first in Nashville, to Wright, Hooper & Co., and was shown to plaintiffs on the same day ; and one of the plaintiffs testified, that they sold the bill of goods to Glover on the faith and credit of it.

The store in which business was carried on by said Glover, or Glover & Humes, was at Leeman's Ferry, in Morgan county, Alabama, on a plantation which belonged to Governor R. Chapman, and which said Glover and Humes were cultivating under a contract of purchase. The store was opened in the latter part of 1871, or the early part of 1872, and the business was discontinued in 1873, having proved to be disastrous. As to the business relations existing between Humes and Glover, Humes thus testified as a witness for himself : " In the latter part of 1871, I made arrangements with Glover to cultivate the plantation in Morgan county known as the 'Chapman place,' in conjunction with him, during the year 1872. The

[Humes v. O'Bryan & Washington.]

business relation was to commence on the 1st January, 1872, and to end at the end of the year. Glover was then living in this county, on a place which he owned, and I employed him to go over himself and superintend the gathering of the crops on the ' Chapman place;' so he was in my employment in the latter part of the year 1871, in the capacity of having the crops gathered. The business relation between us during the year 1872 was this : Governor Chapman wanted to dispose of the place, and agreed to sell to Glover and myself, the purchase-money to be paid on time—five or six years, I think—in installments each year. Under the arrangement between us, Glover was to superintend the cultivation of the place ; and I employed him and his son Angelo,'at a stated amount—I think it was somewhere about six or eight hundred dollars that I was to pay him for their services in superintending the place. He was a man of limited means, and had no income ; and I agreed to furnish the supplies for the hands during the year, all the supplies the hands would need during the year. I also agreed to furnish the stock and the farming implements for the culti-vation of the place, except one or two head of stock (I think it was) which Glover said he could furnish. The distinct un-derstanding between us was, that the supplies I sent there were to be — the tenants were to get them, and he was not to pur-chase anything on a credit; that was part of the agreement. After I was paid for the supplies I had furnished, and also for the use of my stock, or for the stock, if the amount made was sufficient to pay for it, then the overplus profits of the cultiva-tion of the land that year I agreed that Glover should have one half of it. Under that arrangement between us (?) the crop year of 1872, and that relation terminated at the end of that year." He further testified that the contract between them was reduced to writing, but he had not preserved any copy of it; and that Glover was not authorized to contract any debts on his account, or on account of the business.

Geo. S. Gordon, whose deposition was taken by the defend-ant, thus testified: "I heard L. R. Glover speak in reference to the business relations between himself and the defendant (Humes). He stated, emphatically and repeatedly, that the partnership or business connection between them had never been for anything but planting purposes only, and that for debts contracted by him (Glover) Humes was not liable, and knew nothing about them when they were contracted. He further said, that there were written articles of agreement be-tween himself and Humes, which he did not have, and the substance of which he could not recollect, except that they related solely to planting and the planting business, and never at any time related to anything else; that the only occasion

when he heard their contents read, was when they were read in Humes' office to Ledbetter. Glover further disowned any knowledge of the telegrams, until these suits were instituted." The witness further stated, that these declarations were made by Glover in the office of Humes & Gordon, no person but the three being present, and that they were made with special reference to the liability of Humes on the account here sued on. The plaintiffs objected to the interrogatories calling for these declarations, and, on their motion, the court excluded the entire deposition; to which ruling the defendant excepted.

The defendant introduced P. L. Harrison as a witness, by whom he proposed to prove, in substance, that in May, 1872, Glover applied to him for a loan of $300, saying that he wanted it to pay some debts which he had contracted in Nashville; and that Glover further said, in answer to inquiries made by Harrison, that Humes was not his partner except in the planting business, and that Humes would not become surety for the money if loaned. The court excluded this evidence, on the plaintiffs' objection, and the defendant excepted. The defendant introduced M. McCutcheon as a witness, and proposed to prove by him, "that shortly after these goods, shipped by plaintiffs to Glover & Humes at Leeman's Ferry, were received by Glover at the Chapman place, he took a full wagon-load of them, boxed them up, and sent them to Vienna, to Ledbetter & Glover, a firm composed of said L. R. Glover and J. M. Ledbetter." The court sustained an objection by plaintiffs to this question, and the defendant excepted. Said McCutcheon further stated, that he sold liquor on the premises, during the year 1872, "in a side room joining the store room;" that he acted for Glover, and paid the money over to him; and that the liquor belonged to Glover, "as witness understood from him." The court excluded this evidence, on objection by plaintiffs, and defendant excepted. The defendant further proposed to prove by this witness, "that he went with Glover from the Chapman place to Somerville, in the spring of 1872, when Glover told him that he was going to get a license to sell liquor, that Humes didn't know anything about it, and that he didn't intend he should know anything about it." The court excluded this evidence, on objection by the plaintiffs, and the defendant excepted; and he also reserved an exception to the refusal of the court to allow him to ask the witness this question : "Was it, or not, the understanding in that neighborhood, in 1872, that Glover and Humes were simply partners in running the farm that year, and were not partners in any mercantile or commercial business ?" The defendant further proposed to prove, by James McCutcheon, that accounts contracted for goods sold at the store were, by the direction of Glover, sued

on in his name alone, before a justice of the peace; and he reserved an exception to the exclusion of this evidence. These several rulings of the court were based on the principle, as stated by the court, "that any act or declaration of Glover, tending to show that this was not a partnership, is not admissible as against these creditors."

The defendant proposed to prove, by the witness McCutcheon, "that in April and May, 1872, after the purchase of these goods by Glover from plaintiffs, and whilst the goods were on the premises, under the control, and in the possession of said Glover, and before any difficulty had arisen between Glover and Humes, or between plaintiffs and Humes, and when everything was moving on smoothly on the plantation, under the direction and immediate control of Glover, said Glover told him, over and over again, that the goods belonged to him individually, and that Humes had no interest in them, and proposed that he (witness) should join him as a partner in the goods." The court excluded this evidence, and the defendant excepted. The defendant then offered in evidence a certified copy of a mortgage executed by T. E. Williams to said L. R. Glover, dated April 1st, 1872, and purporting to be given to secure a debt contracted for supplies furnished to enable the mortgagor to make a crop during the year 1872; but the court rejected it as evidence, holding "that no declaration, act, or admission of Glover, tending to show either that he was or was not a partner, is admissible on this issue;" and to this ruling the defendant duly excepted.

During the examination of G. G. O'Bryan, one of the plaintiffs, as a witness for them, he produced a letter addressed to them, dated February 20th, 1872, and signed in the name of Glover & Humes; being the letter which ordered the first bill of goods (that for $59), and said to be written on "one of the letter-heads of Milton Humes." It being proved that this letter was in the handwriting of said Glover, and Humes testifying that he had never seen or heard of it until it was produced on the trial, the defendant moved to exclude it from the jury as evidence; and he excepted to the overruling of his motion.

"At the request of the plaintiffs, the court charged the jury in writing," as follows: "Under the issues formed in this case, the burden is upon the plaintiffs: they must prove the correctness of the account for the goods sold, and also that, at the time of the sale of the goods, an actual partnership existed between Glover and Humes in the mercantile business, or that Humes held himself out to plaintiffs, or to the world, so as to induce them to believe that he was a partner of said Glover in said business. To establish a partnership between themselves,

the jury must look to the intention of the parties. It is not necessary that the articles of partnership must be in writing. It may be parol, or verbal; as to creditors and the outside world, may be inferred from the acts of the parties—such as, intimacy between the parties; how the firm had their accounts made out; how they kept their books, and how their boxes of goods were marked; admitting the correctness of debts made by the firm, or promises to pay debts against the firm. But, to make the above named inference (?)—such as, how the accounts were made out, or how the books were kept, or how the boxes were marked—evidence against Humes, it must be shown that he had some agency in keeping the books, making out the accounts, or marking the boxes, or having known or found out that they were so kept, made out or marked. It is not necessary to determine in this case whether the contract between Glover and Humes created a partnership between them, or otherwise; because, if it were established that a partnership in farming existed between them, *it does not authorize either partner to contract in the firm name, for any other purpose than was necessary to carry on said farming business.* The account sued on is such an account as is usually made between merchants, and it therefore devolves on the plaintiffs to prove that a mercantile partnership, not a farming partnership, actually existed, or can be inferred.

"Under these general principles, if the jury find, from the evidence, that Humes admitted, to questions asked him, that he was a partner of Glover & Humes; that when debts were presented to him, made out against Glover & Humes, he promised to pay them; that he, *knowing that the books of the firm were kept in the name of Glover & Humes, made no objection thereto, but impliedly or expressly assented thereto; that he, knowing that goods were being shipped with the boxes marked Glover & Humes, made no objection thereto; that he, knowing that Glover, prior to the making out of the account sued on, had been buying goods in the name of Glover & Humes, made no objection thereto; that if he knew that the license had been taken out in the name of Glover & Humes, and made no objection thereto; or that Glover had been writing letters in the name of Glover & Humes, and made no objection thereto, knowing said letters to have been so written;* or that on the 12th April, 1872, Humes had been informed that a telegram had been received inquiring how the firm of Glover & *Hemm,* Leeman's Ferry, stood, and, being informed that said telegram referred to Glover & *Humes,* did not deny the existence of said firm: Now, if the above circumstances all existed, and existed at and prior to the time of the buying of said goods by Glover in the name of Glover & Humes, and these

facts were known to plaintiffs, and to the outside world, at the time the goods were so sold; then these facts, if found to be true, established a mercantile partnership between Glover & Humes as to creditors, and Humes would be liable for the payment of this debt, if proved to be correct and unpaid. On the contrary, *if the jury find, from the evidence, that Humes, when asked if he was a partner of Glover's in the mercantile business, denied such partnership; that when debts were presented to him, made out against Glover & Humes, he denied his liability therefor; that he never knew the books were kept in the name of Glover & Humes, or that goods were shipped in their name, or that boxes were marked in their name, or that Glover, prior to 12th April, 1872, had been buying goods or writing letters in their name, or that the license had been taken out in their name; or that on said 12th April, 1872, when informed of said telegram inquiring how Glover & Hemm stood, and that the firm meant was Glover & Humes, he then and there denied such partnership; these facts, if found to be true, do not establish a partnership, and the verdict must be for the defendant.* . . .

"The letter purporting to have been written by Glover & Humes, of date February 20th, 1872, addressed to O'Bryan Washington, having been proved to be in the handwriting of Glover, is not evidence against Humes to establish a partnership between him and Glover in the mercantile business, *unless the jury believe, from the evidence in the case, that Humes sanctioned the writing of said letter, or authorized it to be done.* The telegrams offered in evidence are not to be considered as an authority to plaintiffs to sell Glover & Humes, or Glover for Glover & Humes, even a small bill on short time, unless the proof satisfies the jury that Humes knew the first telegram from Nashville was sent in the interest of plaintiffs, as well as of Wright, Hooper & Co. *If the jury believe, from the evidence, that when Humes was notified of the receipt of the telegram from Nashville, and that the same was supposed to refer to the firm of Glover & Humes, and, being informed of Richardson's reply thereto, expressed sorrow at the sending of such a dispatch; and that he and Richardson consulted together, and agreed on Richardson sending the second dispatch; and that Humes, in such conversation, did not deny such partnership; then this is a circumstance the jury can look to, as evidence tending to show a partnership between Glover and Humes as merchants.*

"*The admission of Humes, made subsequently to April 12th, 1872, that a partnership in the mercantile business did on that day exist between him and Glover, is evidence tending to show that a partnership did exist between them on that day,* but does

[Humes v. O'Bryan & Washington.]

not estop or preclude him from now denying it, or proving that in fact such partnership did not exist on that date. *The negligence of Humes to answer letters written him which treat the firm of Glover & Humes as actually existing on 12th April, 1872, denying such partnership, such letters having been written and such negligence occurring subsequent to said 12th April, 1872, is evidence tending to show the existence of such partnership at that date,* but does not estop or preclude him from now denying or proving that in fact no such partnership did then exist."

To the several italicized portions of this charge exceptions were duly reserved by the defendant, and he also excepted to the following additional charge, which the court gave on the request of the plaintiffs : " If the defendant knew that Glover was purchasing goods in the name of Glover & Humes, or kept books in the name of Glover & Humes, or marked his boxes in the name of Glover & Humes, or had license to sell whiskey in their name, or that he had the opportunity of knowing ; then these are circumstances from which the jury may infer a partnership."

The defendant requested the following charges, and reserved exceptions to the refusal of each :

1.   " Richardson's first telegram was not, according to the legal construction of written instruments, withdrawn by his second telegram ; and his second telegram, legally construed in connection with the first, does not mean *sell small bill on short time* to Glover & Humes, but *small bill on short time* to Glover."

2.   " If the second dispatch was sent by Richardson after a conversation with Humes, and on the faith of that conversation, it can be regarded only as an authority to Wright, Hooper & Co. to sell small bill on short time, and not as an authority to any one else to make such sale, and no other person had a right to rely or act upon it."

3.   " The several telegrams offered in evidence are to be taken and construed together, and, so taken and construed, they do not contain any statement that there was any partnership or firm known as Glover & Humes ; and these telegrams can only be considered as a circumstance to put the plaintiffs on inquiry as to whether there was such a partnership."

4.   " In determining whether or not a partnership existed between Glover and Humes, the jury can and should look to the manner in which the purchases of merchandise were made in Huntsville from McCalley and others ; and if they believe said purchases were made by Humes individually, or on his authority alone, these facts must be considered by them in making up their verdict, as to whether a partnership existed."

[Humes v. O'Bryan & Washington.]

5. "If the jury find that plaintiffs sold the goods solely on the faith of the second telegram sent by Richardson to Wright, Hooper & Co., then the jury would be bound to find for the defendant."

All the rulings to which exceptions were reserved by the defendant, are now assigned as error.

L. P. WALKER, W. Y. C. HUMES, and GEO. S. GORDON, for appellant.—(1.) The depositions of the Glovers should have been suppressed, since they were present in court, and were examined as witnesses.—*Com. Bank v. Whitehead*, 4 Ala. 637; *Goodwin v. Lloyd*, 8 Porter, 237; *Eddins v. Wilson*, 1 Ala. 237; *Gardner v. Bennett*, 38 N. Y. Sup. Ct. 197; 1 Abb. Law Dic. 342; *Emlaw v. Emlaw*, 20 Mich. 11. (2.) The depositions of Carney and Carter should have been suppressed, because taken without any affidavit having been made.—Code, §§ 3069–70, 3077; *Worsham v. Goar*, 4 Porter, 441; *Brown v. Turner*, 15 Ala. 832; *Guice v. Parker*, 46 Ala. 616. (3.) The declarations of L. R. Glover should have been admitted as evidence. They were statements of facts of which he possessed competent knowledge, and were at variance with his interest. 1 Greenl. Ev. §§ 147–9; *Overton v. Hardin*, 6 Cold. (Tenn.) 375; *Ivat v. Finch*, 1 Taunton, 141; *Danforth v. Carter*, 4 Iowa, 230; *Lucas v. De la Cour*, 1 M. & Sel. 249; *Peace v. Jenkins*, 10 Ired. 356; *Higham v. Ridgway*, 1 Smith's L. C. (7th Amer. ed.) 343; *Starke v. Keenan*, 11 Ala. 818; *Raines v. Raines*, 30 Ala. 425; *Union Canal Co. v. Lloyd*, 4 Watts & Ser. 394; 2 Whart. Ev. § 1200. They were also admissible because explanatory of possession.—Cases cited in 1 Brick. Digest, 843, § 558; *Clealand v. Huey*, 18 Ala. 343; *Thomas v. Wheeler*, 47 Mo. 363; *Stephens v. Williams*, 46 Iowa, 540. (4.) The evidence showing, or tending to show, a public and notorious disavowal of this alleged partnership, in the neighborhood in which the business was carried on, was competent, and should have been admitted.—*Lovejoy v. Spofford*, 3 Otto, 430; *Bernard v. Torrance*, 5 Gill & J. 383; *Robinson v. Worden*, 33 Mich. 316. General reputation thereof is admissible, to impute knowledge to the plaintiffs of the existence or non-existence of such partnership.—*Carter v. Whalley*, 1 B. & Ad. 11; *Turner v. McIlhaney*, 8 Cal. 575. (5.) The charge of the court as to the defendant's negligence and admission presumed from silence, was an invasion of the province of the jury, and was misleading.—*M. & C. R. R. Co. v. Lyon*, 62 Ala. 71; 21 Ala. 219; 22 Ala. 502; 29 Ala. 240, 374; 25 Kansas, 391. (6.) The court erred, also, in selecting certain enumerated facts, upon which to base a conclusion, thereby withdrawing from the consideration of the jury other facts

bearing on the same issue.—66 Ala. 275, 570 ; 59 Ala. 92 ; 47 Ala. 659 ; 58 Ala. 406 ; 22 Ala. 502, 796 ; 23 Ala. 17 ; 28 Ala. 514 ; 7 Porter, 556. (7.) The qualification in the general charge which was excepted to—" unless the jury believe, from the other evidence, that Humes sanctioned the writing of said letter, or authorized it"—was unsupported by any evidence, and was therefore abstract.—66 Ala. 461 ; 60 Ala. 104 ; 53 Ala. 536. (8.) That portion of the charge which, after selecting a series of facts, asserted that "these facts, if found to be true, do not establish a partnership," was erroneous, because, by the effect it imputed to the selected facts, the burden of proof is shifted to the defendant, whilst the defendant's sworn plea imposed it on the plaintiffs.—*Pennington v. Woodall*, 17 Ala. 685 ; 28 Ala. 602, 693 ; 47 Ala. 564 ; 55 Ala. 154. (9.) The telegrams were written instruments, and should have been construed by the court.—31 Ala. 59, 701 ; 58 Ala. 438 ; 60 Ala. 582 ; 66 Ala. 306 ; 17 Wallace, 124 ; *Whilden & Sons v. P. & M. Bank*, 64 Ala. 1. (10.) The court should have declared, as the proper construction of the telegrams, that they conferred no authority on plaintiffs to sell to Glover.—*McDonald v. Bewick*, 43 Mich. 438 ; *Grant v. Dabney*, 19 Kansas, 388 ; *Hund v. Geier*, 72 Ill. 393 ; *Schomberg v. Cheney*, 3 Hun, N. Y. 677 ; *Segars v. Segars*, 71 Maine, 530. (11.) These telegrams ought to have awakened plaintiffs' diligence to make full inquiry as to Glover's authority. In dealing with him without further inquiry, they assumed the risk of his actual authority.—Whart. Agency, § 137.

D. P. LEWIS, and BRANDON & JONES, *contra.*—(1.) The continuance asked by defendant was granted on condition that the plaintiffs might take the depositions of the witnesses named, and the terms were accepted by the defendant. The Glovers were personally present in court, and were subjected to a full cross-examination ; and this cured the only objection to the depositions. (2.) A person may be charged as a partner, either because he is a partner in fact, or because he has held himself out as a partner, whether to the plaintiff in particular, or to the world in general.—Parsons on Partnership, pp. 62, 63, 65, 67, 71. (3.) As to what constitutes a partnership, see *White v. Toles*, 7 Ala. 569 ; *Howze v. Patterson*, 53 Ala. 207. That there was a partnership in this case, is conclusively shown by the subsequent conduct of the parties, construing and recognizing their relations as a partnership.—*Howze v. Patterson*, 53 Ala. 205 ; *McGrew & Harris v. Walker*, 17 Ala. 824 ; Parsons on Partnership, 71, note ; also, pp. 85–8. According to the testimony of the defendant himself, he and Glover were partners in farming.—Parsons, *supra ;* 24 Howard, 536 ; 44

[Humes v. O'Bryan & Washington.]

N. H. 52; 43 Barb. 285; 6 Ala. 215; 3 Ala. 733; 27 Ala. 245; 30 Ala. 728. If they were partners for one purpose, and Glover engaged in another business in connection with it, without objection or dissent on the part of Humes, then Humes became, as to third parties, an actual partner in that business. Parsons on Partnership, 121. (4.) Limitations or restrictions, though binding as between the partners themselves, do not affect third persons, to whom they are unknown. 2 Greenl. Ev. §§ 481, 485; *Winship v. U. S. Bank*, 5 Peters, 529; *Gill v. Kuhn*, 6 S. & R. 333; *Churchman v. Smith*, 6 Whart. 146; *Tillier v. Whitehead*, 1 Dallas, 269; Story on Partnership, § 101; Parsons on Contracts, 93, 94, 101; *Mauldin v. Br. Bank*, 2 Ala. 205; *Catlin v. Gilder*, 3 Ala. 536. (5.) Whoever dealt with Glover in good faith, relying on the acts and conduct of the parties as partners, is entitled to his action against the partnership.—Amer. L. Cases, 442; *Hart v. Clark*, 56 Ala. 19; *Wagner v. Simmons & Co.*, 61 Ala. 146. (6.) Independent of the question of actual partnership, Humes is liable to these plaintiffs, because he held himself out in this particular transaction as a partner with Glover.—2 Greenl. Ev. § 483; Collyer on Part. §§ 85, 97, 770, 774–5; 2 Kent, 27; 2 H. Bla. 235, 245; 6 S. & R. 258; 2 McLean, 347; 21 Penn. St. 390, 393; 42 Ala. 179. (7.) Any conversation between Humes and Glover, or between Gordon, Humes and Glover, is, as to these plaintiffs, *res inter alios acta*, and cannot be received to affect their rights. (8.) The telegrams were not contracts, but were offered for the single purpose of establishing the fact of partnership.—1 Greenl. Ev. §§ 275, 277, 280, 300.

SOMERVILLE, J.—1. The motions severally made by the appellant, in the court below, to suppress the depositions of George W. and Angelo Glover, should each have been sustained, and the court very clearly erred in overruling them. These witnesses were personally present in court at the time of the trial, when their depositions were offered in evidence. The reason, or existing necessity for taking the depositions, having been removed by the personal presence of the deponents, their oral testimony in open court then became the best evidence. It is the settled and incontrovertible rule, in the absence of a statute to the contrary, that the deposition of a witness is inadmissible, when the witness himself is present in court at the trial, and is competent in every respect to testify.—Starkie's Ev. (Shar.) 409, 410; *Mobile Life Ins. Co. v. Walker*, 58 Ala. 290.

2. We see no error, however, in the action of the court refusing to suppress the depositions of the witnesses, Carney and Carter. The record shows that the court, at a previous

[Humes v. O'Bryan &·Washington.]

term, had granted a continuance of the cause to the defendant, upon his application; and the order proceeds to recite, that, "*in consideration* of said continuance," it was ordered by the court, that the plaintiff be allowed to take the depositions of sundry witnesses, including the two last named, "on *filing interrogatories* and *giving notice* as is required by law; to which *order*," it is added, " defendant excepts."

It cannot be questioned that *nisi prius* courts possess a large discretionary authority in granting or refusing continuances of pending causes between litigants. It is a power essential to the prompt administration of justice, and its exercise is beyond the jurisdiction of the appellate court to control or revise. It is common practice to grant such applications on *conditions*, such as the payment of costs, the admission of certain facts, or the waiving of irregularities in depositions, the taking of which has not been in strict conformity to statutory requirements. The rule of practice, governing applications for continuance, is very broad in its provisions, declaring that " such *terms* may be imposed, *as to the court shall seem proper*."—Rule No. 16, Code (1876), p. 160. The objection urged is, that the court, by its order, dispensed with the preliminary step of an *affidavit*, which is a statutory requirement for the taking of depositions, in civil cases, before a commission can issue for this purpose. If the court can require the admission of an entire statement of an absent witness, as a term or condition of continuance (which is unquestionable practice), it can certainly require the applicant to dispense with the necessity of an affidavit. In the former case, the *whole* statutory machinery for taking depositions is dispensed with, and required to be waived; in the latter case, only a *part* of it.

3. It is insisted, however, that the record shows that the appellant *objected* to accepting *the continuance* on the terms imposed. We do not so construe the record. The recital following the order of continuance is—" to which *order* defendant excepts." It is obvious that the appellant *enjoyed the benefit of the continuance*, and did not object to that; otherwise, he would have insisted on proceeding with the trial of the cause. His exception, according to a well settled rule, must be most strongly construed against him, as the excepting party. It must be taken as an acceptance of the continuance, with an objection to *the terms* imposed. This was not permissible. The enjoyment of the benefit of the order as made, was an acceptance of the condition with which the court saw fit to burden it. The two should have been accepted or rejected as an entirety, and this course does not seem to have been followed.

4. It is an established rule of evidence, that while, in ordinary cases, the mere *declarations* of a person as to a particular

[Humes v. O'Bryan & Washington.]

fact are not evidence of that fact, being regarded as hearsay; yet declarations made by a person which are *at variance with his pecuniary or proprietary interest*, are admissible in evidence of their own truth, under certain circumstances.　These conditions are, that the declarant possessed competent *knowledge of the facts*, and is *deceased* at the time his declarations are proposed to be proved.　The absence of any motive of a pecuniary nature, which would tempt him to falsehood, creates a strong and intrinsic probability of the truth of his declaration; and it is, therefore, admitted as secondary evidence, after the death of the declarant, being the best which the nature of the case will, under the peculiar circumstances, permit.—1 Greenl. Ev. § 147; Starkie's Ev. (Shar.) 64; *Higham v. Ridgway*, 2 Smith's Lead. Cases, 183; 1 Whart. Ev. § 226, *et seq.*　The weight and value of such evidence depends, of course, upon many considerations of a variable character.—*Raines v. Raines*, 30 Ala. 425.

5.　We are of the opinion that the declaration of Glover, testified to by the witness Gordon in his deposition, comes within the class of declarations against interest, under the principle above announced.　Glover's declaration was, that the appellant, Humes, was *never* his partner, except in the planting business; and this statement appears to have been made with special reference to the pecuniary liability of the parties on the claim which is the basis of the present suit.　The *death* of Glover was proved, and it was shown, furthermore, that there were no assets of the alleged mercantile partnership of Glover & Humes, the reputed *firm, as such*, being regarded as *insolvent at the time of Glover's declaration*. This fact, it must be noticed, is of vital importance as affecting the question of interest.　In the absence of the fact of *insolvency*, it is manifest that the converse proposition—that Humes *was a partner* of the declarant—would be a declaration against his interest.　This is so because, if true, it would entitle Humes to a half interest in the partnership assets belonging to the alleged firm of Glover & Humes.　The assertion, therefore, that Humes was *not* a partner, having been made at a time when the partnership business had failed, it was a declaration exonerating him from a pecuniary liability for the partnership debts, and, if true, to this extent doubled the ultimate amount of Glover's liability, by destroying his right of recourse against Humes for any portion of the debts due by the reputed firm. 2 Whart. Ev. § 1200.

6.　There is another not less familiar rule of evidence, applicable to a large number of the rulings of the court below.　It is, that the declarations of one in possession of property, *explanatory of the possession*, made in good faith, and showing the character or extent of his claim to it—whether in his own

exclusive right, or as tenant of another; or the capacity in which he claims, as partner, trustee or agent for another—are admissible in evidence, in an issue of disputed ownership, no matter who may be parties to the litigation.—*Daffron v. Crump*, 69 Ala. 77; *Clealand v. Huey*, 18 Ala. 343; 1 Brick. Dig. p. 843, § 558; *Thomas v. Wheeler*, 47 Mo. 363. The theory, upon which the law admits such declarations, is, that they are a part of the *res gestæ* of the possession itself; such possession being the principal fact, and itself *prima facie* evidence of ownership in fee simple.—1 Greenl. Ev. § 109; *Perry v. Graham*, 18 Ala. 822; 2 Whart. Ev. § 1166. Of course, in all such cases, the fact of possession should itself be admissible as one pertinent to the issue.—*Fail v. McArthur*, 31 Ala. 26.

7. Under the influence of this principle, it is our opinion that the various acts and declarations of Glover, while in possession of the goods, and carrying on the alleged partnership business at the store in Morgan county, were admissible, so far as they were explanatory of his possession, as indicating whether the goods were his own individually, or were claimed jointly by him as partner of another person. Hence, it was admissible to show that, while in actual possession of the alleged partnership assets, he declared that they belonged to him, or to himself and Humes as partners, as the case may have been; or that he conducted the business in the partnership name, or under a partnership license; or that he sold spirituous liquors in his own name, if they constituted ostensibly a portion of the stock of merchandise in the store; or that he sued in his own name to recover the debts due the concern; or, in fine, to prove any act or declaration on Glover's part, illustrating the nature or character of his dominion over the goods, or control of the store, whether for himself exclusively, or as partner with Humes. These acts and declarations all constituted a part of the *res gestæ* of the possession itself, throwing light upon, and characterizing its very nature. As such, they are admissible in evidence, when the principal fact of Glover's possession is itself admissible, as to which there is no contention. They can not be said to be evidence against the defendant, Humes, of the *existence* of the partnership in question, unless some notice of them was brought to his knowledge; but they are relevant to corroborate, or rebut, as the case may be, other evidence offered to prove the existence or non-existence of such a relationship. The weight and sufficiency of such evidence will be more or less conclusive, according to the circumstances of the entire case; but this is a question for the jury. It is easy to see, without specific mention, what parts of the testimony of the witnesses, James and McClellan McCutchen, were improperly excluded by the court under this rule.

[Humes v. O'Bryan & Washington.]

8. It was very clearly not competent to prove the existence or non-existence of the alleged partnership by general reputation. *Hogan v. Douglass*, 2 Ala. 499. Nor could the character of Glover's possession be proved by any general understanding in the neighborhood.—*McCoy v. Odom*, 20 Ala. 502; 1 Brick. Dig. 847, § 608.

9. The rule is settled, however, that when once a partnership is shown to exist by independent testimony, it is then competent to prove a general reputation or common report of its *existence*, in order to impute a probable *knowledge* of such fact to a plaintiff. And for a like purpose, the notoriety of a *dissolution* may be shown to charge one with notice of such fact. Perhaps the same rule might apply, as contended, to the *non-existence* of a partnership in certain cases. · The reason of the rule is obvious. It is based upon the probability that the plaintiff would be likely to know a fact of which no one else in the neighborhood seemed to be ignorant. It should, in our opinion, have no application to persons living at a distance in another State, unless they are shown to have had an opportunity of hearing the common report by frequently visiting the residence of the alleged partners, or otherwise. The prevalence of a local rumor in a country neighborhood in Alabama, without more, would afford no reasonable ground of inference that it was known to the mercantile community of a distant city in Tennessee. What the witness Jamar is shown to have said to the plaintiff, in Nashville, had no reference to any common fame touching the existence or non-existence of the disputed partnership.

10. So, we may further add that, generally speaking, the declaration or act of one partner, not in the presence of his co-partner, as above intimated, is not competent evidence to establish the fact of an existing partnership between them, unless such declaration be one against interest made by one deceased, or fall within some other recognized exception to the rule excluding hearsay evidence.—*Clark v. Taylor & Co.*, 68 Ala. 454. But, as we have sought clearly to indicate above, the declarations of one partner, strictly explanatory of possession, whether against interest or not, within the above rule, are admissible in corroboration of other and independent evidence of an alleged partnership.

11. Under these principles, the letter signed by Glover, in the name of Glover & Humes, dated February 20, 1872, was admissible; also, the mortgage from Williams to Glover, if it was given to secure a debt for goods purchased from the store during the time the business was conducted by Glover. So, it is equally manifest that the note given by Humes to Ewing, and the receipt given by the latter, on account of

mules purchased for Glover, were inadmissible. Nor can we see that there was any error in the exclusion of what was proposed to be proved by Taylor, the circuit clerk, in reference to defendant's efforts .to procure Ledbetter's testimony ; nor, again, of so much of James McCutchen's testimony as related to the settlement between Humes and Glover in reference to the crop grown on the Chapman place in the year 1872. And we are also of opinion that there was no error, under the facts of this case, in excluding proof of the alleged existence of a common report in the neighborhood that Humes and Glover were not partners. The court erred, however, for the reasons above stated, in excluding so much of the witness Harrison's testimony as related to Glover's declaration that the stock of goods in the store were his own, and did not belong to Glover & Humes. But Glover's statement as to where, or on whose account he had purchased the goods, or any portion of them, being merely narrative of a past transaction, was properly excluded, as. also his declaration of inability to induce Humes to become his security in order to borrow money from the witness Harrison.

12.    It is unnecessary for us to consider whether Glover and Humes were partners *inter se* in the business of farming, under the stipulations of the written contract shown to exist between them. It is clear that this relation could not be held to exist, unless these articles be construed to embrace an agreement for a community of *risks*, as well as for a distribution of *gains.—Mayrant v. Marston*, 67 Ala. 453. However this may be, the existence of a partnership for the purpose of farming would not, of itself, authorize the carrying on by one partner, in the firm name, of a store for the sale of merchandise ; for this would be a mercantile partnership, not necessarily or usually incident to the business of farming.—*McCreary v. Slaughter*, 58 Ala. 230 ; Story on Part. §§ 111–113, 126.

13.    This observation is applicable, only so far as concerns the effort on the part of the plaintiffs in this action to fasten a liability upon Humes, based on the theory of his being an actual partner of Glover. It does not affect the question of liability which may have arisen from the alleged fact that Humes permitted the mercantile partnership to be carried on in his name. It is well settled that, although no partnership may exist, yet where one, either expressly or by culpable silence, permits himself to be held out as a partner, and debts are contracted on the faith of this fact with third persons, he will be held responsible for debts contracted with such persons, if they deal with the alleged firm in ignorance of the true relationship of its members.—Parsons on Part. 71, 412–13 ; 2 Greenl. Ev. § 283 ; *Nicholson v. Moog*, 65 Ala. 471, 472.

[Humes v. O'Bryan & Washington.]

If, therefore, the jury were satisfied, from all the evidence, that the defendant, Humes, permitted the mercantile partnership to be carried on in the name of himself and Glover, it was not material whether a technichal partnership existed between them in the farming business or not. The contract for farming was relevant, as affecting the business intimacy of the parties, and was admitted as one of many links in a chain of evidence bearing on the main issue in dispute.

14. It is plain that, if the jury believed the evidence as to Humes' alleged failure to answer the letters written to him by the plaintiffs, in which they treated the firm of Glover & Humes as an existing partnership, and no sufficient explanation is given of such neglect, they would be authorized to treat this silence as in the nature of an implied admission that such a partnership did exist. The charge of the court may have been somewhat misleading, in the use of the word *negligence* in this connection, instead of *failure*, or *neglect*. So, it should have been submitted to the jury, as a question of fact, whether there was such an admission by the defendant, this being disputed.

15. It is contended by the appellant, that the telegrams which were introduced in evidence were written instruments, and constituted the contract between the plaintiffs and the defendant, Humes, provided the jury concur in the belief that the one which Richardson sent was transmitted by Humes' authority. It is, therefore, insisted that they should have been construed by the court, and not by the jury. This would undoubtedly be true, if the telegrams in question had passed between the parties to this suit, and had been introduced in evidence to prove a contract between them, which was sought to be made the basis of a liability. Such, however, is not the case. The telegrams passed between other parties, and are not introduced to prove a contract between the parties to the present suit. The purpose of their introduction was to show, in connection with other explanatory evidence, that it was believed by certain parties in Nashville that there was such a mercantile firm in Alabama as Glover & Humes; that the plaintiffs reasonably participated in this belief, and were encouraged by Humes in selling goods on the faith of it to the reputed partnership; or, in other words, that Humes permitted himself to be held out as a partner of Glover in the business of merchandising. It is clear that the plaintiffs derived no technical *authority* from Richardson's last telegram, directed to Wright, Hooper & Co., and saying, "Sell small bill, and on short time;" by which they would be specifically empowered to extend a like credit, even though this dispatch was transmitted by consent of Humes. But it is equally clear that, upon seeing this telegram, they would be authorized to infer that Richardson's

[Humes v. O'Bryan & Washington.]

intention was to revoke his first telegram, which disclaimed all knowledge of the existence of the firm or partnership inquired about, and to impliedly assert the fact of its existence.

16.    The court also properly submitted to the jury the inquiry, as to whether or not the telegram from Nashville did not have reference to Glover & Humes, instead of Glover & *Hemm*, a suggestion which there was evidence tending to prove. It can not be said, as implied in the last clause of the second charge requested by defendant, that the plaintiffs had no right to rely or act upon the information derived through the medium of these dispatches.    There was no error in refusing to give the first three charges, nor the last charge, numbered five, requested by defendant.    So, the fourth charge was erroneous under the principles heretofore discussed.

17.    It was improper for the court to assume, as seems to have been inadvertently done in a portion of the general charge, that the defendant had made an *admission* of the existence of the alleged partnership.    This was a contested fact, and should have been left to the jury.

18.    It is quite clear that no restrictions placed by Humes upon Glover's authority to purchase any thing in carrying on their farming operations could affect the plaintiffs in this action, unless it was shown to have been brought home to their knowledge, in which case it might be relevant to put them on inquiry as to the relations of the alleged partners.    If the defendant allowed Glover to carry on a store in his name, either expressly or by culpable silence, and the plaintiffs gave the alleged firm credit on the faith of this fact, it would be immaterial what restrictions had been placed upon Glover's authority by private agreement, if the plaintiffs were not cognizant of them ; and the *onus* would be on the defendant to show that they were, if the contract sued on be one presumptively within the scope of a partnership carrying on such a mercantile business, of which latter proposition there would seem to be no doubt.

For the errors above specified, the judgment must be reversed, and the cause remanded.    We can see no error in the other rulings of the court than those above indicated, and the various assignments based on them are accordingly overruled.

Reversed and remanded.