THE SHAWMUT BANK *v.* THE PLATTSBURGH AND MONTREAL RAILROAD COMPANY.

*Railroad. Corporation.*

If a railroad company be authorized by the act, under which it organizes, "to contract for the transportation and delivery of, and to transport and deliver, persons and property, conveyed over their road, beyond its termini," the purchase by the company of a steamboat, designed by them in good faith for the transportation of freight and passengers from the terminus of their road to the line of another, is not *ultra vires*, and a note given by the company in consideration of such a purchase, will be binding upon them.

ASSUMPSIT upon a promissory note for two thousand dollars, dated August 11, 1852, executed by the defendants by their president, William Swetland, and payable to William J. Odell, or order, on or before August 11, 1854, with interest, and indorsed by Odell to the Rutland and Burlington Railroad Company, and by that company to the plaintiffs. Pleas, the general issue, and *nul tiel* corporation, and trial by the court at the November Term, 1857,—BENNETT, J., presiding.

The plaintiffs gave in evidence the note described in the declaration, and also introduced testimony proving, as the court found, that Swetland was the president of the Plattsburgh and Montreal Railroad Company, at the date of the note, and executed it in that capacity ; that the defendants were a corporation owning a railroad from Plattsburgh to the Canada Line ; that the directors of that company, deeming it advisable in order to secure the successful operation of their road, that a connection should

be formed by a ferry boat under their own control, between Platts-burgh, the southern terminus of their road, and Burlington, Ver-mont, by vote authorized Samuel F. Vilas and Moss K. Platt to purchase the steamer Francis Saltus for that purpose; that that steamer was accordingly purchased of Odell and one Proctor for twenty-four thousand dollars, and the note in question, with oth-ers, given for her; that the title of the vessel was taken to Vilas and Platt, and that they mortgaged her to the vendors to secure the payment of the promissory notes given for her; that the steamer was taken into the use of the defendants and was run upon the ferry between Plattsburgh and Burlington to transport passengers and freight in connection with their road; that their directors kept the accounts of her earnings, paid out of the com-pany's funds one of the notes given for her purchase, and expected that the defendants would have the profits of the boat, if there should be any; that the note in question was transferred by Odell and Proctor to the Rutland and Burlington Railroad Company, and by them to B. T. Reed, who procured it to be discounted by the plaintiffs (whose existence as a corporation in Massachusetts was also proved), upon his guaranteeing its payment; and that after the commencement of this suit, Reed, upon the requirement of the plaintiffs, paid the amount of the note to them upon his guaranty, and that the suit was thereafter prosecuted for his benefit.

The defendants gave in evidence the articles of association sub-scribed by their stockholders, which set forth that they organized as a corporation for the purpose of constructing, owning and maintaining a railroad from Plattsburgh to the Canada line, in pursuance of the provisions of the general act of the New York legislature to authorize the formation of railroad companies, passed in 1848; see N. Y. Revised Statutes, vol. 3, p. 583; and a spe-cial act of the same legislature, passed April 7, 1849, entitled, " an act to declare the public use of a railroad from Plattsburgh to Canada line." These acts were introduced in evidence, and the second section of the latter statute was as follows:

" Said corporation, when duly formed, may connect its road at the Canada line with any road in Canada, and have power as a corporation to contract for the transportation and delivery of,

and to transport and deliver persons and property conveyed over its road, at any place beyond the termini of the road, within or without this State, so far as the power to be exercised out of this State may be granted by this legislature."

It was admitted that the plaintiffs had commenced a proceeding in chancery against Vilas and Platt, and the defendants, to foreclose the mortgage of the steamer given to secure her purchase money, and that such proceeding was pending at the trial of this case. It was also admitted that the plaintiffs had sued the defendants upon another of the notes given for the purchase of the vessel, in one of the courts of the State of New York, and had recovered a judgment thereon against the defendants by default.

The defendants also put into the case, subject to all questions as to its admissibility and legal effect, the written opinion of Judge JAMES, of the New York Supreme Court, delivered in the case of *Vilas & Platt* v. *Henry R. Campbell*, which was an action for a trespass to the steamer Francis Saltus during the time she was held by Vilas and Platt for the defendants as above mentioned. In this opinion Judge JAMES held, that by the purchase of the steamer from Odell and Proctor, the Plattsburgh and Montreal Railroad Company acquired no title to her, because the purchase was unauthorized by the statutes and articles of association under which that company was organized, and was entirely *ultra vires*, and that therefore the notes given for such purchase were entirely void as against the company.

The defendants insisted that the plaintiff was not entitled to recover upon this evidence, and that Swetland had no legal authority to give the note in question so as to bind them, but the court held otherwise, and rendered judgment for the plaintiffs for the amount of the note and interest, to which the defendants excepted.

*Levi Underwood*, for the defendants.

1. The powers of the Plattsburgh and Montreal Railroad Company are to be found in the articles of association which are its fundamental law. The directors can not bind the company to pay for schemes beyond the objects of the incorporation.

It is clear that the purchase of the steamboat to run upon Lake

Champlain is not within the scope of the articles of association, and is not binding unless made so by the act of 1849 ; Ang. & Ames on Corp. § 256, 276 ; *Coleman* v. *E. C. R. R. Co.*, 10 Beav. 1 ; *H. & N. H. R. R. Co.* v. *Croswell*, 5 Hill, 385 ; *Penn. Co.* v. *Dandridge*, 8 Gill & J. 248 ; *Vilas & Platt* v. *Campbell*, James' opinion ; *McCullough* v. *Moss*, 5 Denio, 564 ; 1 N. Y. Rev. Stat., p. 599, § 3.

The act of 1849 does not confer any authority *ipso facto*. It authorizes the company to exercise such powers, but does nothing more, and as the articles of association do not embrace it, it is not to be inferred that the company intended to take such power.

If that act is to receive the construction given to it by the court below, then it should be proved that the corporation accepted it.

But that act was not intended to give anything further than power to make anything more than business connections with other carriers.

Such acts are to be construed strictly ; 21 Conn. 294.

2. The plaintiffs took the note of Reed, who has paid it, thus extinguishing it as a cause of action in their behalf.

*George F. Edmunds*, for the plaintiffs.

BARRETT, J.   It appears that the defendants, by a vote of their directors, authorized Vilas and Platt to purchase of Odell & Proctor the steamboat "*Francis Saltus*," "the directors deeming it indispensable to the successful operation of their road, that a connection should be formed by a ferry boat, under their own control, between Plattsburgh (the southern terminus of their road) and Burlington, Vermont."

The boat was accordingly purchased, for twenty-four thousand dollars, and the note in suit was given with other notes, for the purchase money.   The boat was taken into the use of the defendants and run on the ferry from Plattsburgh to Burlington, for their benefit, to transport passengers and freight in connection with their road.

The note was negotiated to the Rutland and Burlington Railroad Company, and by that company negotiated to B. T. Reed, Esq., for money loaned by him to them.   Afterwards it was dis-

counted by the plaintiff bank, in the ordinary course of business, the same being guaranteed by said Reed. This suit was brought by the plaintiffs, and afterwards, upon the requirement of the plaintiffs, the amount of the note was paid by said Reed to them, in consequence of his undertaking as guarantor. The suit is now prosecuted for the benefit of said Reed.

It is made a point in the defendants' brief, that the payment by Reed extinguished the note. This, however, is not urged in the argument, nor does it seem to be relied on as a ground of defence. We think a defence on that ground.is not available to the defendants upon the facts in this case.

The main ground on which the defence is placed is, that the purchase of the boat is *ultra vires* of the corporation, and therefore the note is void as against the defendants.

The defendant corporation exists under the general statute laws of the State of New York, passed in 1848, III Rev. Stat., 583, and the special act passed April 7, 1849. Section 2, of the last named act is as follows:

" Said corporation, when duly formed, may connect its road at the Canada line with any road in Canada, and have power as a corporation to contract for the transportation and delivery of, and to transport and deliver persons and property, conveyed over its road, at any place beyond the termini of the road, within or without this State, so far as the power to be exercised out of this State may be granted by this legislature.".

The corporation was organized on the 25th of February, 1850, by articles of association commencing as follows:

" We whose names are hereto subscribed, do associate and form ourselves into a corporation for the purpose of constructing, owning and maintaining a railroad from Plattsburgh to the Canada line, and do subscribe the following articles of association, in pursuance and by virtue of an act of the legislature of the State of New York, entitled ' an act to authorize the formation of railroad corporations,' passed March, 27, 1848, and of the acts amending the same, and also an act entitled ' an act to declare the public use of a railroad from Plattsburgh to the Canada line,' passed April 7th, 1849," etc., etc , in detailed compliance with the provisions of said acts.

From these legislative enactments, and the organization under them, there is little room for doubt, that the defendant corporation was fully empowered to transport freight and passengers from the southern *terminus* of their road to Burlington.    There can be as little doubt that the corporation, by its directors, undertook to exercise that power, and to enjoy the fruits 'thereof, in the purchase and use of the boat.    Nothing in the case indicates that they were designedly acting in this respect *ultra vires*, or that they had any supposition that they were so doing.    And certainly, if any doubt existed on this point, all fair presumptions ought to be made in favor of their honesty and good sense.

If the act of 1849 had been silent on the subject of transportation beyond the line of the defendants' road, the case might have involved a question of some difficulty, upon which § 3 of title 3, chap. 18, part 1 of the Revised Statutes of New York (vol. 1, p. 732), might have had an important bearing.    But it seems to us that sec. 2, of the act of 1849, was specially cognizant of that provision of the revised statutes.    The power, both to contract for the transportation of, and to transport, persons and property beyond the *termini* of the defendants' road, is "expressly given" in the act of 1849, under which the defendants are incorporated and organized.

We are, therefore, not required to determine how far the principle of the decision in *Noyes et al.* v. *Rutland and Burlington Railroad Company*, 27 Vt. 110, or in *Rutland and Burlington Railroad Company* v. *Odell & Proctor*, 29 Vt., might be invoked upon the question of the defendants' liability in this suit.

The power to transport persons and property from Plattsburgh to Burlington, in connection with the defendants' road, being clearly conferred, of course that power carried with it the power to use the necessary and proper incidental means of exercising and enjoying it.    By the very construction of the corporation, the adoption and bringing into use of such means is entrusted to the discretion and management of the directors.    Their acts are the acts of the corporation, and by and for them the corporation is bound.

Now it is not, as it could not well be, seriously claimed that all due formalities have not been practiced in negotiating the purchase

of the steamboat, and in giving the notes of the corporation for the purchase money.   The trade was made by a committee appointed and delegated by the directors, for the express purpose of making the trade.   Upon the trade being made, the notes were executed by the president of the company, in his official business capacity, for the company.   The property purchased was taken into possession and use by the company; in pursuance of that purchase, and the emoluments have been received and enjoyed by the company.

It would savor somewhat of pedantry to cite authorities to show the legal propriety of the transaction as the case discloses it.

Under these views we have no occasion to express an opinion on several questions that might be raised in the case as it comes before us.

The opinion of Judge JAMES seems to have been introduced, in the trial below, in the character of *evidence,* but to what precise point is not clearly shown.   If it was as evidence merely of what his opinion was, it is, without doubt, entitled to, as it receives, full credit.   But if it was as evidence of the law of the subject, as a matter of fact, the county court have found the fact against it, and from that finding, as depending on the weight of evidence, exception does not lie.   If it was introduced merely as an authority, to be considered in the same light as any other decision of the courts of another State, it is quite clear that we are unable to regard the law as he does.

The result is, that the judgment of the county court is affirmed.