# Central Railroad & Banking Company v. Smith.

*Action against Foreign Corporation, as Common Carrier, for Personal Injuries and Lost Baggage.*

1. *Proof of agency, ownership, and partnership.*—Agency, ownership, and partnership are facts, to which a witness may testify when he has

[Central R. R. & Banking Co. v. Smith.] .

knowledge of their existence ; but they can not be proved by general reputation.

2.  *Former judgment ; effect as admission of partnership.*—When two are sued as partners, a judgment by default on personal service may operate as an admission of the fact of partnership, in a subsequent action by a third person against either one of them ; but, when the action is not founded on an instrument of writing purporting to be signed in the partnership name, the execution of which can only be denied by a sworn plea, and the general issue is pleaded, or other general plea denying their liability, a judgment against the defendants is not admissible evidence against either of them, in a subsequent action by a third person, as an admission of the partnership.

3.  *Acts and declarations of person in possession ; when admissible against another.*—The acts and declarations of a person in possession of property are admissible to explain his possession, but not to prove joint ownership or partnership with another, unless notice thereof is brought home to his knowledge.

4.  *Same ; proof of ownership of vessel.*—On this principle, the bond and certificate of enrollment of a steamboat, affidavit of ownership, and license as a coasting-vessel, are not admissible evidence against a person therein named as a part owner, to prove such ownership, unless it is shown that he had notice or knowledge thereof.

5.  *Powers of corporations.*—A corporation, whether created by a special statute, or organized under general laws, can only exercise the powers expressly granted, the implied powers necessary to carry into effect those express powers, and such incidental powers as pertain to the purposes of their creation.

6.  *Foreign railroad and banking corporation ; power to run steamboat on river.*—The Central Railroad and Banking Company of Georgia, which was authorized by its charter to construct and operate a railroad between the cities of Savannah and Macon, and to organize and carry on a banking business, has no power, express, implied, or incidental, to purchase and run a steamboat on the Chattahoochee river, which is no part of its route, nor to form a partnership with a natural person for carrying on that business.

7.  *Liability of corporation on contracts ultra vires, and for torts.*—An action against a corporation, founded on a contract which is *ultra vires,* may be defeated on that ground ; but this principle does not apply to an action *ex delicto,* founded on a tort committed by its officers or agents in the performance of their duties.

8.  *Same.*—To render a corporation liable, in an action *ex delicto,* for damages caused or suffered from the negligence of its agents or servants in the performance of a contract which is *ultra vires,* it must be shown that the contract was its corporate act, and not the unauthorized act of its officers or agents ; and this may be shown by proof of authority conferred by a prior corporate act, or by a subsequent ratification by a corporate act under circumstances which required an election to ratify or repudiate.

Appeal from the Circuit Court of Barbour.

Tried before the Hon. H. D. Clayton.

This action was brought by Andrew J. Smith, against the appellant, described as "a corporation created by the laws of Georgia, and doing business in Alabama by agents," to recover damages for injuries sustained by the sinking of the steamboat *George W. Wylly,* on the 11th April, 1883, while running on the Chattahoochee river between Columbus, Georgia, and Apalachicola, Florida ; the plaintiff having been a passenger on

. [Central R. R. & Banking Co. v. Smith.]

the boat at the time, and claiming damages for personal injuries sustained, and also for the loss of his baggage. The complaint alleged, that the defendant corporation was a common carrier, and was, in connection with one Whitesides (who was not sued), the owner and proprietor of said steamboat, and engaged in running and operating it for the transportation of passengers and freight for a reward; and that the accident and injury were caused by the negligence of the officers and persons in charge of the boat, and its unsound and rotten condition. The defendant pleaded not guilty, and a special plea which averred, in substance, that it had no authority under its charter to engage in running a steamboat on the Chattahoochee river, and that the persons who were engaged in running said steamboat, at the time of the alleged loss and injury, were not the agents or servants of said defendant. Issue was joined on both of these pleas.

On the trial, as the bill of exceptions shows, the plaintiff introduced several persons as witnesses, who testified that, at and before the time of the accident, the *George W. Wylly* was one of a line of steamboats known as the "*Central Line*," and that, according to general reputation, said boats belonged to and were run by the defendant corporation; and the court admitted this evidence, against the objection and exception of the defendant. The plaintiff also offered in evidence the record of a judgment recovered by A. C. Gordon against the defendant and said Whitesides as partners, for damages on account of goods lost on said steamboat at the time of said accident. That action was brought in the Circuit Court of Barbour county, on the 24th October, 1882; and the judgment, which was rendered on the 7th June, 1883, recited that the cause was tried "on issue joined on the plea of the general issue." The plaintiff offered the record of this judgment in evidence, in connection with the testimony of the attorney for the plaintiff therein, who stated that the judgment was paid to him by said defendant corporation; for the purpose of showing, as the bill of exceptions recites, "that there was no denial in said suit that they owned and operated said boat, that a judgment was rendered against them, and that said judgment was paid by them." The court admitted the evidence, and the defendant excepted. The plaintiff offered in evidence, also, a certified copy of the certificate of enrollment of said steamboat as a coasting vessel, together with the bond and affidavit, in which it was stated by said Whitesides "that he owns one-twelfth, and the Central Railroad and Banking Company of Savannah, Georgia, owns eleven-twelfths of said vessel." In connection with this evidence, as the bill of exceptions states, "plaintiff's counsel stated to the court, that it was not offered for the pur-

pose of showing title, but for the purpose of showing the enrollment and registration of said boat, and that they were held out to the public as part owners of the boat, and that it was stuck up where the people could see it, and they were thus held out as the owners of the boat. No testimony was offered to show that the defendant knew of such enrollment or bond." The court admitted the evidence, against the defendant's objection, " but only for the purpose of showing that the defendants held themselves out as owners;" and the defendant excepted.

The defendant read in evidence the charter, or act of the General Assembly of Georgia by which it was incorporated, originally by the name of the Central Railroad and Canal Company, which was changed to its present name by an amendatory act approved December 14th, 1835. By the provisions of this charter, the corporation was authorized to construct and operate a railroad between the cities of Savannah and Macon, Georgia, and also to carry on a banking business; and it was also given "full power and authority to carry such railroad over and across all or any rivers, creeks, waters, or water-courses, that may be in the route thereof, by any suitable bridges or other means; *provided*, that when such railroad shall cross any navigable water-course, the same shall not be so constructed as to impede the navigation thereof."

The defendant requested the following, with other charges:

" 4. If the jury believe, from the evidence, that the defendant corporation had no power under its charter to own or operate the *George W. Wylly* on the Chattahoochee river, on the 11th April, 1883, they must find a verdict for the defendant." The court refused this charge, and the defendant excepted to its refusal.

" 5. The defendant had no power, under its charter, to own or operate the steamboat *George W. Wylly* on the Chattahoochee river on the 11th April, 1883." The court gave this charge as asked, but afterwards added to it, on request of the plaintiff, these words: " *But this will not excuse defendants, if the evidence shows they did operate it;*" and to this addition, or explanatory charge, the defendants excepted.

" 6. The defendant can not be held liable, by implication, for an act it had no power to perform under its charter; and if the jury believe, from the evidence, that it had no power under its charter to own or operate boats on the Chattahoochee river, on the 11th April, 1883, the fact (if the jury so find the fact) that it held itself out as owning or operating said steamboat, could not operate to make the defendant liable for any damages to plaintiff, for the negligent management of said steamboat

on that day." The court refused this charge, and the defendant excepted.

" 7. The defendant can not be held liable, by implication, for an act it had no power under its charter to perform ; and if the jury believe, from the evidence, that the defendant had no power under its charter to own and operate boats on the Chattahoochee river on the 11th April, 1883, then common report that it was concerned in owning or operating the *George W. Wylly* on that day, even though not disputed by the defendant, can not operate to render it liable in damages to plaintiff, for the negligent management of said boat on that day." The court refused to give this charge, and the defendant excepted.

" 11. The court, construing the defendant's charter, charges the jury, that this corporation did not have the authority or power to own or operate a steamboat ; and this charter being a public law of Georgia, where the corporation resides, all persons are charged with notice of such want of authority or power." The court gave this charge as asked, and afterwards gave, in explanation thereof, on request of plaintiff, a charge in these words : " *But this will not excuse the defendants' negligence, if the evidence shows they did operate it.*" To this explanatory charge the defendant excepted.

" 12. The plaintiff can not hold the defendant liable, as the owner of said boat, or as operating it, on the ground that it was generally believed that the defendant was such owner, or was operating such boat ; unless it appears from the evidence that plaintiff was thereby influenced to contract with the officers of the boat, and to take passage with them." The court refused this charge, and defendant excepted.

" 13. The defendant being a corporation, with all its powers expressly defined by its charter, there can be no implication of partnership with any other person, unless the charter authorizes such partnership." The court refused this charge, and the defendant excepted.

" 14. The defendant has a right to make a traffic arrangement with the boat *George W. Wylly*, or with a line of boats, or with other railroad corporations ; and such traffic arrangement is, of itself, no evidence of defendant's owning any interest, or having any control of such boat, or railroad." The court gave this charge as asked, but afterwards gave, in explanation of it, on request of plaintiff, the following additional charge : " *But, if the evidence shows that said defendant was in fact operating said boat on said 11th April, 1883, and that said boat was sunk by reason of its unsoundness, or the gross negligence of its captain or pilot, and plaintiff suffered damages therefrom, then defendant may be liable in this action.*" To this explanatory charge the defendant excepted.

[Central R. R. & Banking Co. v. Smith.]

The several rulings of the court on the evidence, the refusal of the charges asked, and the explanatory charges given at the instance of the plaintiff, are now assigned as error.

JNO. D. ROQUEMORE, and JOHN PEABODY, for the appellant. (1.) Proof of general reputation, or notoriety, as to the existence of a partnership, is not admissible to show title or ownership.—2 Ala. 58, 499 ; 4 Stew. & P. 34 ; 4 Ala. 432 ; 8 Ala. 486 ; 17 Ala. 824 ; 3 Stew. & P. 135 ; 26 Ala. 733 ; 63 Ala. 527, 601 ; 53 Ala. 104 ; 20 Ala. 502 ; 21 Ala. 151 ; 23 Ala. 626 ; 9 Ala. 382 ; 1 Ala. 249 ; 7 Ala. 371 ; 9 Porter, 266 ; 13 Ala. 296 ; 49 Ala. 184 ; 74 Ala. 64 ; 3 Kent, 149 ; 1 Greenl. Ev. § 494.   (2.) The registration record of the boat was itself inadmissible, and the paper offered was an unauthenticated copy of it.—*Jones v. Pitcher*, 3 Stew. & P. 135.   (3.) The record of Gordon's judgment ought not to have been admitted as evidence.—*Jones v. Kolisenski*, 11 Ala. 607 ; 17 Ala. 681, 832 ; 25 Ala. 161, 300 ; 3 Porter, 401 ; 9 Porter, 412; 7 Porter, 466 ; 15 Ala. 609 ; 19 Ala. 430 ; 29 Ala. 174.   (4.) The defendant had no power, under its charter, to own or operate a steamboat on the Chattahoochee river, or to be concerned in that business with another ; and no contract could be made by it in respect to such ownership, or the running and operating of said boat.—7 Geo. 24 ; 43 Geo. 51 ; 63 Geo. 194 ; 69 Geo. 542 ; 131 Mass. 258 ; 21 How. 441 ; 8 Gill & J. 272, 320 ; 67 Ala. 588.   (5.) No action will lie against a corporation, for acts attempted to be performed beyond its corporate powers. 22 Con. 502 ; 3 Vroom, 328 ; 96 Eng. Com. Law, 121 ; 97 C. B. 290 ; 34 Amer. Rep. 495, *note* ; 80 Ill. 419 ; 76 N. Y. 506 ; 40 Barb. 274 ; 9 Heisk. 543 ; 40 N. H. 230 ; 50 Ind. 112 ; 67 Ala. 588 ; 37 Ala. 560 ; 58 Ala. 241 ; 1 Redf. Railways, 594.

S. F. RICE, and H. R. SHORTER, *contra*.   (No brief on file.)

CLOPTON, J.—The Central Railroad and Banking Company was chartered by the State of Georgia, for the purpose and with power to construct and operate a railroad from Savannah to Macon, and to organize and do a banking business.   The complaint alleges that the defendant and one Whitesides were the owners and proprietors of a steamboat called the *George W. Wylly*, and were engaged in operating the same on the Chattahoochee river, for the carriage of passengers and freight from Columbus, Georgia, to Apalachicola, Florida, and intermediate landings.   The action is brought by appellee, to recover damages for injuries sustained, while a passenger on the boat in April, 1883.   For the purpose of proving ownership of the steamer, and partnership or agency in operating it, the court,

37

against the objection of defendant, admitted the following evidence: 1st, general reputation; 2d, the record of a former suit between A. C. Gordon and the defendant; and, 3d, bond and certificate of enrollment, affidavit of ownership, and license to employ the boat in carrying on the coasting-trade.

1. Ownership, partnership, and agency are facts, to which witnesses, who know their existence, may testify. But, while the notoriety of a fact in a particular community may be admissible, to lay a foundation for an inference that one residing in the community had knowledge thereof, the existence of the fact having been otherwise established, it is well settled, that it is not competent to prove by general reputation ownership, partnership, or agency. These do not fall within any of the exceptions to the inadmissibility of hearsay evidence.—*Humes v. O'Bryan*, 74 Ala. 64; *McCoy v. Odum*, 20 Ala. 502; *Blevins v. Pope*, 7 Ala. 371.

2. It may be true that, where two persons are sued as partners, a judgment by *default* on personal service may, in a subsequent action against them by a stranger, be competent as an admission of the partnership. In such case, it is competent only as an *admission*, and is received on the same grounds as other admissions. The effect of an admission can not be accorded to a judgment, when the liability is denied and controverted in the suit. A denial of any and all liability can not be regarded as an admission of liability *as partners*. The suit of Gordon not being on an instrument in writing purporting to be signed in the partnership name, it was not necessary for the defendant to have contested the partnership charged by special plea. The verdict and judgment thereon, the general issue having been pleaded, do not convert the denial into an admission by the defendant. It is admitted that the record of a former suit and judgment, though between different parties, is admissible to prove the existence of the former suit, and the rendition of the judgment, when these become material matters of inquiry; but, for the judgment to operate as a bar, or as evidence of the facts on which it professes to be founded, it must be between the same parties, or their privies. Generally, a judgment can not be used as evidence by one party in a subsequent suit, when an opposite decision would not be evidence for the adversary party. The benefit must be mutual and reciprocal.—*Phillips v. Thompson*, 3 Stew. & Port. 369; *Trilby v. Seybest*, 12 Penn. St. 101. The former suit and judgment are *res inter alios*.

3-4. The acts and declarations of a party in possession of property are admissible, so far as explanatory of his possession; but not to prove joint ownership or partnership with a third person, unless notice of them is brought to the knowledge of

such other person; though they may be received to corroborate or rebut other evidence to prove the existence of a partnership. The manner in which the books and accounts are kept, and the merchandise is marked, is not available proof of a partnership, unless it is shown that the party against whom the evidence is offered had some agency in the acts, or sanctioned or approved them; and, ordinarily, the statements and admissions of one partner are not competent evidence to establish a partnership. *Humes v. O'Bryan, supra ; McNeill v. Reynolds*, 9 Ala. 318; *Thornton v. Kerr*, 6 Ala. 823. The certificate and bond of enrollment, the affidavit of ownership, and the license were the acts and declarations of Whitesides and the officers; and the record shows there was no testimony that the defendant had any knowledge of, or participation in them.

5–6. The merits of the case involve the consideration of the questions, whether the corporation has power, under its charter, to own steamboats, and to engage, in association with a natural person, in the business of carrying persons and freights on the Chattahoochee river; and, if without power, whether under any, and what circumstances, it is liable to a passenger for injuries resulting from the negligence or unskillfulness of those in charge of the boat.

The general rule, that corporations created by an act of the legislature, or organized under general laws, can exercise only the powers expressly granted, the implied powers necessary and proper to carry into effect the express powers, and such incidental powers as pertain to the purposes of their creation, is not controverted. It may be conceded, that a railroad company, in the absence of express power, is authorized to make traffic arrangements for transportation by water, or may purchase, own, and operate steamboats, or other water-craft, when such an arrangement or business legitimately pertains to the corporate purposes, or may reasonably be inferred to have been contemplated and intended by the creating power. Such power is incidental to the purposes of the corporation, and such inference is reasonable, when a railroad company is incorporated with power to construct a railroad between fixed and designated *termini*, and to effectuate the construction it is necessary to cross navigable rivers, bays, or arms of sea, which, on account of their width and depth, or from other causes, can not be bridged ; or when a body of water, lying at the termination of the railroad proper, separates it from the metropolis, to and from which it was contemplated, intended, and is necessary to transport freight and passengers conveyed over the road,—"from the ostensible and substantial *termini* of their route ;" or when the act under which the company is organized authorizes it " to contract for the transportation and delivery of, and to deliver persons and prop-

[Central R. R. & Banking Co. v. Smith.]

erty, conveyed over their road, beyond its *termini*."— *Wheeler v. S. F. & A. R. R. Co.*, 31 Cal. 46 ; *Shawmut Bank v. P. & M. R. R. Co.*, 31 Vt. 491 ; *So. Wales R. R. Co. v. Redmond*, 10 Com. B., N. S., 674. . In such cases, the power is implied, as necessary and proper to accomplish the objects of the incorporation ; or is incidental, pertaining to its purposes as expressed in the charter or general law, and without which the express powers are ineffectual.

In *Wheeler v. S. F. & A. R. R. Co.*, *supra*, it is said : " It is one thing to build and own a line of steamers to some foreign country, or some distant port, carrying on a wholly distinct and independent business entirely foreign to the objects of a railroad corporation, which might just as well, and a great deal better, be transacted by some other company organized for the purpose ; and quite another, to own and control steamboats for crossing rivers and bays in the line of the road, and the use of which is convenient, proper, and necessary to a successful accomplishment of the objects for which the road is built and operated." It may be stated, generally, that a corporation has no power to engage in any business, not authorized by the law of its creation ; and a railroad company is unauthorized to use or apply its funds in aiding and carrying on business foreign to, and unconnected with its proper and legitimate purposes and objects, although the design and effect may be to augment the business of the road, and increase the profits of the corporators. Under the operation and application of the general rule, it has been held, that a company incorporated for the construction of a plank-road between designated points, with the right to take tolls, is not authorized to establish a stage-line 'on their road ( *Wiswall v. G. & R. P. R. Co.*, 3 Jones Eq. 183) ; that a corporation chartered to lay out, make, and keep in repair a road from a point in the vicinity of Mt. Washington to the top of the mountain, and to take tolls,' and to build and own toll-houses, had no authority to establish stage and transportation lines (*Downing v. Mt. Wash. R. R. Co.*, 40 N. H. 420) ; and that corporations organized to construct and operate railroads have no power to buy steamboats to run in connection with their roads (*Pearce v. M. & Ind. R. R. Co.*, 21 How. 441). Lord Langdale, as quoted by Mr. Justice Campbell, in the case last cited, says : " Ample powers are given for the purpose of constructing and maintaining the railway, and for doing all business required for its proper use when made. But I apprehend that it has no where been stated, that a railway company, as such, has power to enter into all sorts of other transactions. Indeed, it has been properly admitted, that railway companies have no right to enter into new trades or businesses, not pointed out by the acts. But it has been contended, that they have a

right to pledge, without limit, the funds of the company for the encouragement of other transactions, however various and extensive, provided that the object of that liability is to increase the traffic upon the railway, and thereby to increase the profits of the shareholders. There is, however, no authority for any thing of that kind." The statute of creation, construed as including, not only the expressly granted powers, but also implied and incidental powers—powers necessary, and directly appropriate to the execution of the express powers—is the measure of the powers of the corporation, and operates to the exclusion of all others.

A late decision of the Supreme Court of Georgia has rendered a further discussion of the question unnecessary. In *Gunn v. v. Cen. R. R. & Banking Co.*, that court has construed the powers conferred by the charter of the defendant, and held that the corporation has no power to enter into a partnership with a natural person to purchase and run a steamboat on one of the rivers of that State. This decision was made in a suit brought by a passenger on the same steamboat, to recover damages for injuries sustained at the same time, and under the same circumstances, as the plaintiff in the present action. If we entertained doubt of the power of the defendant to engage in such business,—when it is said, " to be in doubt is to be resolved,"—comity would suggest an acceptance of, and acquiescence in the construction of the statutes of that State, under which the corporation was organized, by the court of last resort. We observe, however, an allusion to another statute, which authorizes railroad companies " to build, construct, and run as part of their corporate property, such number of steamboats or vessels as they may deem necessary to facilitate the business of such companies." This statute does not appear in the present record, and can not be, and is not considered by us.

7. With the postulate assumed, that the defendant has no authority to own and operate, in association with a natural person, a steamboat on the Chattahoochee river, for carrying persons and freights, there remains to be considered the liability of the defendant to a person for injuries suffered on a boat thus owned and operated, while a passenger thereon.

This court has repeatedly decided, that the contracts of corporations, which they have no power to make, are void, and that the courts will not enforce them. " Such contracts on the part of a corporation are *ultra vires*, and void, and no right of action can spring out of them."—*Marion Sav. Bank v. Dunkin*, 54 Ala. 471; *Chambers v. Falkner*, 65 Ala. 448. No contract made by a corporation, not within the scope of its powers, can be made valid, or the foundation of a right of action, by the assent of the shareholders. If the corporation attempts to carry such

[Central R. R. & Banking Co. v. Smith.]

contract into execution, dissentient stockholders, though a minority, may restrain its consummation. And if suit is brought against the corporation on such contract, they may avail themselves of the defense of *ultra vires.*—*Davis v. Old Col. R. R. Co.,* 131 Mass. 258. The settled doctrine of this court is, that a reception and retention of the fruits and benefits of the transaction do not estop the corporation from denying its power to make the contract; though an action may be maintained, in a proper case, against a corporation, for the money or property received, the legal effect of such suit being a disaffirmance of the prohibited contract.

Were the present action founded on a contract of transportation, it is unquestionable, that the defendant could successfully interpose the defense of *ultra vires.* The action is, however, *ex delicto,* founded on the common-law duty of a common carrier. The plaintiff does not require the aid of an illegal contract to establish his case; its enforcement is not necessary to entitle him to a recovery. The rules applicable are those which govern in cases of torts committed by a corporation. The question is, what is the liability of a corporation for a tort, committed while transacting a business without and beyond the purview of the corporate powers and purposes? This is followed by another question; by what authority, and in what manner, can a corporation be subjected to such liability?

While, as the law confers no power or permission to commit a wrongful act, every species of tort may be technically *ultra vires,* it is well established, that corporations may commit almost every kind of tort, and be liable to an action for the same. In such case, the doctrine of *ultra vires* has no application.—*Mer. Bank v. State Bank,* 10 Wall. 604. "A corporation is liable to the same extent, and under the same circumstances as a natural person, for the consequences of its wrongful acts, and will be held to respond in a civil action, at the suit of an injured party, for every grade and description of forcible, malicious, or negligent tort or wrong which it commits, however foreign to its nature, or beyond its general powers, the wrongful transaction or act may be."—*N. Y. & N. H. R. R. Co. v. Schuyler,* 34 N. Y. 30. Accordingly, actions have been maintained against corporations for libel, malicious prosecutions, assault, and other torts too numerous to be mentioned.—*Green v Lon. Gen. Om. Co.,* 7 Com. B., N. S. 388: *P. W. & B. R. R. Co. v. Quigby,* 21 How. 202; *Jordan v. Ala. Gt. So. R. R. Co.,* 74 Ala. 85. Generally, it may be said, that corporations are liable for the consequences of tortious acts done by its authority, though not within the scope of its powers, express, implied, or incidental. The distinction between the liability of a corporation, on an unauthorized contract, and for a negli-

[Central R. R. & Banking Co. v. Smith.]

gent or wrongful act in the performance of such contract, is clearly and properly drawn by Selden, J. in *Bissell v. Mich. So. & No. Ind. R. R. Cos.*, 22 N. Y. 258; which was an action by a passenger on a train of cars, which by contract the two companies were unitedly running, for a breach of duty to convey him safely, the passenger having been injured by the negligence of their servants. The defense of the companies was, that, in making the contract, they transcended their powers, and, consequently, in judgment of law, they were not operating the road, and did not undertake to carry the plaintiff over it. After holding that the contract to operate the consolidated roads, and to transport the plaintiff, was illegal and void, he says: "It is said, that if the contract was *ultra vires*, and the corporation is protected from all responsibility for its violation on that ground, it must be equally free from responsibility for an injury inflicted while attempting to perform it. But this, I apprehend, by no means follows, though it is probably true, so far as the duty to observe due care grows out of the contract. The plaintiff's claim, however, rests not upon his contract, but upon the right which every man has to be protected from injury through the carelessness of others. It has the same legal foundation as that of one who has been injured by the negligent driving of some person upon the public highway, or has been run over by a train of cars, when crossing the railroad track. The duty to observe care, in these cases, arises, not upon any contract, but from the obligation which rests upon all persons, whether natural or artificial, so to conduct as not through their negligence to inflict injury upon others." An exemption from liability in such cases, because the act is *ultra vires*, would be a license to corporations to do wrongs to others. From these principles it follows, that if the defendant undertook the business of transporting persons by a mode of conveyance other than that authorized and provided by the charter, its duties and responsibilities to a passenger are the same as if the business was authorized and legal.

8. But, before the duties and responsibilities attach, the corporation must undertake and engage in the business, and thereby assume its burdens. Of this there can be no implication, from the isolated fact, that some officer or agent has engaged, in the name of the company, in running and operating the boats; in other words, there can be no implication that a corporation has made a contract, or engaged in business transcending its powers.—Green's Brice's Ul. Vires, 364. It may be inferred from proved circumstances, as other facts, but is not the subject of implication. Corporations are responsible for the wrongs committed by their officers, agents, or servants, while in the course of their employment; but, if the officer,

agent, or servant, "go beyond the range of his employment or duties, and of his own will do an unlawful act injurious to another, the agent is liable, but the master or employer is not." *Gilliam v. S. & N. R. R. Co.*, 70 Ala. 268. The limitation is, the scope of the employment, or delegated authority. If an officer or agent can not directly subject the corporation to liability for his tortious act beyond the range and course of his employment, though done while engaged in its performance, for what reason, or on what principle is it, that an officer or agent can, by making an unlawful transaction, and engaging in an unauthorized and unlawful business, in the name of the company, without the authority of the corporation, indirectly subject it to liability for the negligent or intentional wrongs of the agents or servants employed by him in the performance of such contract, or in carrying on such business? While corporations should be held to a strict responsibility for the wrongful acts of their employees, when done in the course of their employment, and connected with the execution of the business for which incorporated, they should be protected against the consequences of unauthorized acts of their officers or agents, committed in excess of its powers, and unconnected with the business or purposes of their incorporation and organization, especially when dealing with persons charged with notice of their powers, and the nature and extent of the employment and authority of the officer or agent.

In *Brakan v. N. J. R. & T. Co.*, 32 N. J. Law, 328, it is said : "In considering the question whether the agent has the authority of the corporation, so as to make it answerable for his act, the purposes for which the company was incorporated must not be overlooked. An authority given even by the board of directors, in express terms, will not, in all cases, be the authority of the corporation. The directors are only agents themselves, and their powers are necessarily limited within the scope of the purposes for which the corporation was created, beyond which they are not authorized to bind the corporation. To fix the liability of a corporation for the tortious acts of one of its employees, done in obedience to the commands of its officers, the act must be connected with the transaction of the business for which the company was incorporated. If the directors should order an agent to take a person out of his house and beat him ; or if the directors of a banking company should purchase a steamboat, and engage in transporting passengers, the corporation would not be liable for the misfeasance or nonfeasance of agents employed in that business." It is true that the board of directors may be invested by the charter, or general law, with such management and authority as practically to constitute it the corporation ; but, by the provisions of the char-

ter of the defendants, the directors are agents and representatives, with authority limited by the scope of the powers, business, and purposes of the corporation. It will be observed that the business was not carried on in the name of the corporation. As there is no implied authority of any officer or agent to make an *ultra-vires* contract, or transaction, and on that ground merely bind the corporation, it follows, that if the boats were purchased and engaged, in connection with Whitesides, in the business of transporting persons and freight on the Chattahoochee river, by the president, superintendent, or even the directors, the corporation is not bound thereby, and is not liable for the negligent or wrongful acts of the persons employed in such business, unless the transaction was previously authorized, or subsequently ratified by the corporation. Without such authority or ratification, the persons thus employed are not the agents or employees of the corporation. As the immediate or direct act of the officer or agent, in such case, can not bind the corporation, his mere knowledge of, and acquiescence in the prosecution of such business, are not tantamount to a ratification by the corporation. Considering the difference between the principles which govern the liability of the company for the tortious acts of its agents committed in the course of their authorized employment, and its liability for the tortious acts of persons employed in the conduct and prosecution of a business undertaken on behalf of the corporation by its agents, beyond the range of their employment, and prohibited by the laws of its creation, the previous authority or subsequent ratification, in order to bind the corporation, must be in corporate capacity.

A corporation is an artificial body, a distinct person, in legal contemplation, from the stockholders, in which the corporate property is vested. Its will is usually or ordinarily expressed at a meeting of the corporators. Its officers are its agents, and not the agents of the stockholders. In this sense, previous authority, to bind the corporation by the act of an officer or agent transcending its powers and unconnected with its authorized business and purposes, must be the result of corporate action, as contradistinguished from the individual action of the stockholders or officers. Subsequent ratification results, when a knowledge of the business being thus conducted, and of the reception and retention of its fruits and benefits, is brought home to the corporators, at a time, and under circumstances which require them to elect to repudiate or be bound, and they fail to disavow the act; in other words, any facts, which would be a ratification of the unauthorized acts of an agent by a principal who is a natural person.

An application of these principles will probably be a sufficient guide on another trial.

Reversed and remanded.