## STATE OF MAINE

### *vs.*

## CANADIAN PACIFIC RAILWAY COMPANY.

### Penobscot.    Opinion May 6, 1905.

*Statutes.    Construction.    Railroads.    Taxation.    Apportionment.    Mileage Basis. Franchise Tax.    Stat. 1901, c. 145.    R. S. (1883), c. 6, § 42.    (R. S., c. 8, § 25.)*

Words in a statute are to be construed in reference to the subject to which they relate and the connection in which they are used, and where in such connection their meaning is ambiguous the consequences of an interpretation made according to their ordinary and popular definition may be considered in determining their legal signification.

As used in sec. 42, chap. 6, R. S. 1883, amended by chap. 145 Public Laws 1901, the word "railroad" comprehends the equipment, roadbed, sites of depots and warehouses, and other real estate incidentally used in its business, and from it the words "line or system" cannot be disconnected.    There is meant in this connection a railroad "operated as a part of a line or system extending beyond this state."

The mileage basis of apportionment in taxing railroads and other public service companies is eminently just, but there are exceptional cases where deductions should be made to prevent manifest inequality of value per mile.

A railroad may be in a legal sense considered a unit capable of proportionate subdivisions measured by miles, but where it is especially chartered to own and operate, in connection with its transportation business, lines of steamboats across navigable waters beyond its termini the length of such lines should be excluded from the computation in determining the franchise tax.

The spirit and intention of the statute are evidently to include only the miles of single track of actual railroad lines.

On agreed statement.    Judgment for the State.

Debt brought by the State of Maine against the Canadian Pacific Railway Company to recover the semi-annual installments of the excise tax assessed by the Board of State Assessors against said company for the year 1902.

The case is stated in the opinion.

*George M. Seiders,* Attorney-General, for the State.

*C. F. Woodard,* for defendant.

SITTING: EMERY, WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

PEABODY, J.   This is an action of debt brought by the State of Maine against the Canadian Pacific Railway Company to recover the semi-annual installments of its excise tax for the year 1902.

It is reported to the law court upon an agreed statement of facts to determine the legal construction of the statute sec. 42, chap. 6, R. S. (1883) as amended by chap. 145 Public Laws, 1901, fix the amount of the tax in accordance therewith, and render judgment accordingly.   The statute is as follows:—"The amount of such annual excise tax shall be ascertained as follows: the amount for the gross transportation receipts as returned to the railroad commissioners for the year ending on the thirtieth day of June preceding the levying of such tax, shall be divided by the number of miles of railroad operated, to ascertain the average gross receipts per mile; when such average receipts per mile do not exceed fifteen hundred dollars, the tax shall be equal to one-half of one per cent of the gross transportation receipts; when the average receipts per mile exceed fifteen hundred dollars and do not exceed two thousand dollars the tax shall be equal to three-quarters of one per cent of the gross receipts; and so on increasing the rate of the tax one-quarter of one per cent for each additional five hundred dollars of average gross receipts per mile or fractional part thereof, provided that the rate shall in no event exceed four per cent.   When a railroad lies partly within and partly without the state, or is operated as a part of a line or system extending beyond the state, the tax shall be equal to the same proportion of the gross receipts in the state, as herein provided, and its amount shall be determined as follows : the gross transportation receipts of such railroad, line or system, as the case may be, over its whole extent, within and without the state, shall be divided by the total number of miles operated to obtain the average gross receipts per mile, and the gross receipts in the state shall be taken to be the average gross receipts per mile multiplied by the number of miles operated within the state."   It provides for an excise tax upon a railroad based upon the average gross transportation receipts per mile of the railroad operated.

The defendant company operates in connection with its railroad, several lines of steamships upon the Pacific Ocean and upon certain inland waters. It is claimed by the defendant that these steamship lines with its main, double, and side tracks form a composite line or system, whose length should be reckoned as the number of miles operated within the meaning of this statute. The total length of railroad and steamship lines combined was 15633.7 miles, and the gross receipts of these combined lines were $30,307,990.54, making the gross receipts per mile $1938.63. There being 232.8 miles in the state the gross receipts in the state, if determined upon this basis would amount to $451,313.06; the tax would be at the rate of three quarters of one per cent, amounting to $3384.84. The State Assessors determined the amount of the tax on the basis of the length of single track of the whole line of railroad, excluding steamship lines, double, and side tracks. The length of the single track was 7563.3 miles; the gross earnings of the railroad exclusive of steamship lines were $27,925,229.98, making the gross receipts per mile $3692.20 and the gross receipts in the state $859,544.16; the rate of taxation would, on this basis, be one and three quarters per cent, and the tax would be $15,042.02. There has been paid on account of the tax $4,808.50.

The defendant resists the payment of the tax because: 1. The assessors did not include in their computation the transportation lines across the Pacific Ocean. 2. They did not include the yard, siding and second track lines in their computation.

The regularity of the proceedings of the Board of State Assessors is not otherwise questioned, and the constitutionality of our statute instituting the excise tax has been established by judicial decision in the case of *Maine* v. *Grand Trunk Railway Co.*, 142 U. S. 217. The sole question presented is the legal construction of the words "railroad," "line" and "system" in the last clause of the statute quoted. They should be construed according to their ordinary and popular meaning in connection with the subject matter to which they relate. The word "railroad" comprehends not only the equipment and road way but the sites of depots, warehouses, and other real estate incidentally connected with the business, including property

which would properly be subject to local taxation independently of the excise tax. The signification of the words "line or system" depends upon the subject to which they are applied, and the connec- tion in which they are used. They have not in themselves a mean- ing so clear and explicit that they must be interpreted according to their ordinary and popular meaning, regardless of the consequences of interpretation. Endlich on Int. Stat. sec. 26; *Clark* v. *Maine Shore Line R. R. Co.*, 81 Maine, 477; *Coffin* v. *Rich*, 45 Maine, 507; 4 Bacon's Ab. 652. They are used in a statute which provides a franchise tax upon railroads for the right and privilege of doing business in the state in their corporate capacity, and defines the basis upon which the tax is to be determined; and the purpose of the stat- ute and the language used in other parts of the section must be con- sidered in interpreting these words. Endlich on Int. Stat. secs. 35- 41. The tax is not upon the business of the railroads as property, but it is an annual sum having reference to their gross transportation receipts returned to the railroad commissioners in proportion to their mileage in the state; and to find this sum these receipts are divided by the number of miles of railroad operated to determine the average gross receipts per mile; and when the railroad lies partly within and partly without the state or is operated as a part of a line or system extending beyond the state the receipts over its whole extent are divided by the total number of miles operated to obtain the average gross receipts per mile. It seems obvious that the words "line or system" cannot be disconnected with the word "railroad" of which they are predicated. It is a railroad "operated as a part of a line or system extending beyond the state." It is claimed by the defendant that the punctuation is significant as separating the words "line or system" from the word "railroad," but the force of the word "such" preceding them requires this punctuation. The full ren- dering of the clause is, "The gross transportation receipts of a railroad which lies partly within and partly without the state, or a railroad which is operated as a part of a line or system extending beyond the state, as the case may be, over its whole extent within and without the state, shall be divided by the total number of miles operated to obtain the average gross receipts per mile; and the gross receipts in

the state shall be taken to the average gross receipts per mile, multiplied by the number of miles operated within the state."

The defendant company was chartered by the Canadian Parliament in 1881, with authority to construct lines of railroad and in addition to own and run steam and other vessels, and consequently was not operating its railroad in this state at the time the present method of taxing railroads was adopted. The words "line or system" first used in the statute of 1881 did not expressly apply to any railroad having authority to acquire lines of steamers and steamships for carrying on, in connection with their railroad business, transportation business across the American Continent, including its navigable waters and across the Pacific Ocean. It cannot be presumed that the legislature contemplated, when it adopted the present rule of determining the amount of the excise tax, railroads having as part of their lines and systems steamboat and steamship lines over navigable waters. The reverse would be true, for a corporation formed for the purpose of constructing and operating a railroad cannot, unless special powers and authority are granted under the general law or by a special statute of a state, engage in the business of running steamboats and steamships beyond its terminus. This would be as distinct from railroad transportation as the business of express, telegraph, or pipe-line companies. Pearce v. Madison, etc., R. R. Co., 21 Howard (U. S.) 441; Green Bay, etc., R. Co. v. Union Steamboat Co., 107 U. S. 98; Shawmut Bank v. Plattsburgh, etc., R. Co., 31 Vt. 491. The physical conditions governing the operation of such transportation companies are unlike those pertaining to railroads, and while they would be subject to an excise tax it might not be equitable or reasonable to determine the amount by the same rules. And it is to be considered that steamboat lines instead of passing over territory, for which states could properly impose a tax, pass over inland waters or waters of the ocean, public highways which subject them to no burden of taxation. Several of the states have adopted the mileage basis of apportionment in taxing railroad and other public service companies; and some beside Maine assess the tax on the amount of gross transportation receipts, and others variously on profits, cash values of property, or capital stock. This method has been held by the U. S.

Supreme Court to be not only legal but eminently fair.    Mr. Justice Brewer in *Pittsburgh, etc., R. R. Co.* v. *Backus,* 154 U. S. 421, says of the statute of Indiana, which places the tax on the cash value of railroad property, "It is ordinarily true that when a railroad consists of a single continuous line the value of one part is fairly estimated by taking that part of the value of the entire road which is measured by the proportion of the length of the particular part to that of the whole road."    To the same effect is the opinion by Mr. Justice Miller in *State R. R. Tax Cases,* 92 U. S. 575.    This view is also approved in other cases relative to excise taxes on gross receipts, income or value of the franchises.    *Del. R. Tax Case,* 18 Wall. 206; *Erie R. R.* v. *Pa.,* 21 Wall. 492; *Western Union Telegraph Co.* v. *Mass.,* 125 U. S. 530; *Pulman's Palace Car Co.* v. *Pa.,* 141 U. S. 18; *Charlotte, Columbia, etc., R. R. Co.* v. *Gibbes,* 142 U. S. 386; *Columbus Southern Railway* v. *Wright,* 151 U. S. 470; *Maine* v. *Grand Trunk Railway,* 142 U. S. 217, supra.    These cases recognize the fact that there may be exceptional cases where deductions should be made to prevent a manifest inequality of values per mile, but holding generally that a railroad can be considered a unit so far as to be capable of fair proportionate subdivisions measured by miles. The statute of Michigan expressly excludes from the computation the number of miles of water roads over navigable waters of the U. S. and within the state.    It would be difficult to find a case where the miles of a line of transportation should more properly be excluded in computing the tax than that of steamboats or steamships, whose water roads are untaxable, and whose lines are defined by no fixed limits but subject to voluntary deviation and such as is occasioned by winds and currents.

We think the contention of the state, that the spirit and intention of the statute are to include only actual railroad lines as existing on the face of the earth and operated as such, should be sustained.

*Judgment for the plaintiff.*